IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GILEAD SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| APOTEX INC., APOTEX CORP., MSN | ) | |
| LABORATORATORIES PRIVATE LTD., | ) | |
| MSN LIFE SCIENCES PRIVATE LTD., and | ) | |
| MSN PHARMACEUTICALS INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF GILEAD SCIENCES, INC.'S
COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Gilead Sciences, Inc. ("Gilead" or "Plaintiff"), by its undersigned attorneys, hereby alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement arising under the patent laws of the U.S., Title 35, United States Code, against Defendants Apotex Inc. and Apotex Corp. (collectively, "Apotex") and Defendants MSN Laboratories Private Ltd., MSN Life Sciences Private Ltd., and MSN Pharmaceuticals Inc. (collectively, "MSN") (all collectively, "Defendants").  This action arises out of Defendants' submission of an Abbreviated New Drug Application ("ANDA") to the United States Food and Drug Administration ("FDA").

2.      Defendants seek approval to market a generic copy of Gilead's highly successful product, GENVOYA®, containing a four-drug combination of elvitegravir, cobicistat, emtricitabine, and tenofovir alafenamide, prior to the expiration of U.S. Patent No. 10,039,718 ("the '718 patent" or the "Patent-In-Suit").  Gilead attaches hereto a true and accurate copy of the '718 patent as Exhibit A.

## PARTIES

### *Plaintiff Gilead*

3.      Plaintiff Gilead Sciences, Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 333 Lakeside Drive, Foster City, California 94404.

4.      Gilead is a research-based pharmaceutical company that invents, develops, and brings to market revolutionary pharmaceutical products in areas of unmet medical need, including treatments for human immunodeficiency virus ("HIV"), hepatitis B virus ("HBV"), hepatitis C virus ("HCV"), hepatitis delta virus ("HDV"), liver diseases, serious cardiovascular and respiratory diseases, and cancer.  Gilead's portfolio of products includes treatments for HIV using the drugs elvitegravir, cobicistat, emtricitabine, and tenofovir alafenamide.  Gilead is the owner of the Patent-In-Suit.

### *Defendant Apotex*

5.      On information and belief, Apotex Inc. is a foreign corporation organized and existing under the laws of Canada, having its principal place of business at 150 Signet Drive, Toronto, Ontario, Canada M9L 1T9.

6.      On information and belief, Apotex Corp. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 2400 N. Commerce Parkway Suite 400, Weston, FL 33326.

7.      On information and belief, Apotex, alone and through subsidiaries, affiliates, agents, and partners, manufactures, distributes, and/or imports generic copies of branded pharmaceutical products for sale and use throughout the United States, including in this District.

8.      On information and belief, Apotex, along with MSN, together and with subsidiaries, affiliates, agents, and partners, prepared and filed ANDA No. 218575 (the "GENVOYA ANDA"), seeking approval to manufacture, import, market, and/or sell a generic copy of Gilead's GENVOYA® product (the "GENVOYA ANDA Product") in or into the United States, including in this District, if the FDA approves the GENVOYA ANDA.

9.      On information and belief, Apotex is the holder of the GENVOYA ANDA.  On information and belief, Apotex Corp. is an authorized U.S. agent of Apotex Inc., including for the GENVOYA ANDA.  On information and belief, Apotex Inc. and MSN will manufacture the GENVOYA ANDA Product for Apotex Corp., which will market and distribute it in the United States.  On information and belief, the acts of Apotex Inc. and MSN complained of herein were done with the cooperation, participation, and assistance of Apotex Corp.

10.      On information and belief, Apotex and MSN collaborate with respect to the development, regulatory approval, commercial manufacture, marketing, sale, offer for sale, and/or distribution of the GENVOYA ANDA Product for the U.S. market, including the market in the State of Delaware.

11.      On information and belief, Apotex and MSN intend to act collaboratively to commercially manufacture, market, distribute, offer for sale, and/or sell the GENVOYA ANDA Product, in the event that FDA approves the the GENVOYA ANDA.

### *Defendant MSN*

12.      On information and belief, MSN Laboratories Private Limited ("MSN Labs") is a foreign corperation organized and existing under the laws of the Republic of India, having a place of business at MSN House, Plot No. C-24, Sanathnagar Industrial Estate, Hyderabad, Telangana 500018, India. On information and belief, MSN Labs is in the business of, among other things,

manufacturing generic copies of branded pharmaceutical products for sale in the U.S. market and/or manufacturing APIs for generic copies of branded pharmaceutical products for sale in the U.S. market through various operating subsidiaries throughout the U.S., including in the State of Delaware.

13.    On information and belief, MSN Life Sciences Private Ltd. ("MSN Life") is a foreign corporation organized and existing under the laws of the Republic of India, having a place of business at Sy. No. 455/A, 455/AA, 455/E, and 455/EE, Chandampet (Village), Shankarampet-R (Mandal), Medak District - 502255, Telangana, India. On information and belief, MSN Life is the holder of FDA Drug Master File ("DMF") No. 030650 (the "MSN DMF"), which is referenced by the GENVOYA ANDA. On information and belief, MSN Life is a wholly owned subsidiary of MSN Labs. On information and belief, MSN Life is in the business of, among other things, manufacturing generic copies of branded pharmaceutical products for the U.S. market and/or manufacturing APIs for generic copies of branded pharmaceutical products for the U.S. market, including in the State of Delaware.

14.    On information and belief, MSN Pharmaceuticals Inc. ("MSN Pharma") is a corporation organized and existing under the laws of Delaware, having its corporate offices and a place of business at 20 Duke Road, Piscataway, NJ 08854. On information and belief, MSN Pharma is a wholly owned subsidiary of MSN Labs and U.S. agent for MSN Life. On information and belief, MSN Pharma is in the business of, among other things, manufacturing generic copies of branded pharmaceutical products for the U.S. market and/or manufacturing APIs for generic copies of branded pharmaceutical products for the U.S. market, including in the State of Delaware.

15.    GENVOYA® includes cobicistat on silicon dioxide ("COBI on $SiO_2$"). On information and belief, the GENVOYA ANDA Product will contain COBI on $SiO_2$. On

information and belief, MSN has and will manufacture and supply COBI on $SiO_2$ to Apotex for use in the GENVOYA ANDA Product.

16. On information and belief, the acts of Apotex complained of herein were done with the cooperation, participation, and assistance of MSN.

17. On information and belief, Apotex and MSN collaborated to prepare and submit to FDA the GENVOYA ANDA, seeking approval to manufacture, import, market, and/or sell a generic copy of Gilead's GENVOYA® product in the U.S., including in this District, if FDA approves the GENVOYA ANDA.

18. On information and belief, Apotex and MSN will collaborate with respect to the development, regulatory approval, commercial manufacture, marketing, sale, offer for sale, and/or distribution of the GENVOYA ANDA Product for the U.S. market, including the market in the State of Delaware.

19. On information and belief, MSN has acted in concert with Apotex and has been actively involved in the submission to FDA of the GENVOYA ANDA, at least by supplying COBI on $SiO_2$ to Apotex, authorizing reference to MSN's DMF No. 030650, performing testing and product characterization required for regulatory approval, and providing data regarding COBI on $SiO_2$ necessary for regulatory approval for inclusion in the GENVOYA ANDA.

20. On information and belief, Apotex and MSN intend to act collaboratively to commercially manufacture, market, distribute, offer for sale, and/or sell the GENVOYA ANDA Product, in the event that FDA approves the GENVOYA ANDA.

21. On information and belief, as the supplier of COBI on $SiO_2$ for the GENVOYA ANDA Product, MSN will directly benefit financially if the GENVOYA ANDA is approved, through sales of the GENVOYA ANDA Product.

## JURISDICTION AND VENUE

22.    This action arises under the patent laws of the United States of America, 35 U.S.C. §§ 100 et seq., including §§ 271(e)(2), 271(a), 271(b), 271(c), and 271(g).  This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

23.    The Court also has jurisdiction to adjudicate this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  An actual, substantial, and justiciable controversy exists between Gilead and Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment regarding the parties' adverse legal interests with respect to the Patent-In-Suit.

### *Apotex Inc.*

24.    On information and belief, this Court has personal jurisdiction over Apotex, Inc. by virtue of, *inter alia*, its systematic and continuous contacts with this jurisdiction, as alleged herein. On information and belief, either directly or through subsidiaries, agents, and/or affiliates, Apotex Inc. regularly and continuously transacts business within Delaware, including by manufacturing, selling, offering for sale, marketing, distributing, and/or importing generic versions of pharmaceutical products in the United States, including in Delaware.  On information and belief, either directly or through subsidiaries, agents, and/or affiliates, Apotex Inc. has received more than 90 FDA approvals to market and sell pharmaceutical products throughout the United States, including in Delaware.  On information and belief, Apotex Inc. derives substantial revenue from the sale of those products in Delaware and has availed itself of the privilege of conducting business in Delaware.

25.    On information and belief, Apotex Inc. markets and distributes its pharmaceutical products through subsidiaries, agents, and/or affiliates including Apotex Corp., a Delaware

corporation that is registered to do business and has appointed an agent to accept service in Delaware. On information and belief, Apotex Inc., through Apotex Corp., is licensed to sell generic pharmaceutical products in the State of Delaware pursuant to 24 Del. C. § 2540.

26. On information and belief, Apotex Inc. and Apotex Corp. operate and act in concert as an integrated, unitary business. On information and belief, Apotex Inc. and Apotex Corp. work in concert with respect to the manufacturing, marketing, sale, and distribution of generic pharmaceutical products throughout the United States, including in Delaware.

27. This Court also has personal jurisdiction because Apotex Inc., together with Apotex Corp. and MSN, has filed an ANDA for a generic copy of Gilead's GENVOYA® product, seeking approval from the FDA to market and sell the GENVOYA ANDA Product, throughout the United States, including in Delaware. On information and belief, Apotex Inc. intends to commercially manufacture, use, and sell the GENVOYA ANDA Product upon receiving FDA approval. On information and belief, if and when the FDA approves the GENVOYA ANDA, the GENVOYA ANDA Product would, among other things, be marketed, distributed, and sold in Delaware, and/or prescribed by physicians practicing and dispensed by pharmacies located within Delaware, all of which would have a substantial effect on Delaware. By filing the GENVOYA ANDA, Apotex Inc. has made clear that it intends to use its distribution channels to direct sales of the GENVOYA ANDA Product into Delaware.

28. Further, this Court has personal jurisdiction over Apotex Inc. because it has previously been sued in this District and has not challenged personal jurisdiction, and Apotex Inc. has affirmatively availed itself of this Court's jurisdiction by filing counterclaims in this District. *See, e.g.*, *Gilead Sciences, Inc. et al. v. Apotex Inc. et al.*, Civil Action No. 22-1399, D.I. 25 (D. Del. Mar. 1, 2023); *Gilead Sciences, Inc. v. Apotex Inc. et al.*, Civil Action No. 20-189, D.I. 28

(D. Del. Apr. 13, 2020); *Horizon Medicines LLC et al. v. Apotex Inc. et al.*, Civil Action No. 22-640, D.I. 35 (D. Del. June 28, 2022); *Galderma Laby's L.P. et al. v. Apotex Inc. et al.*, Civil Action No. 22-724, D.I. 13 (D. Del. June 23, 2022); *Bayer Healthcare LLC et al. v. Apotex Inc. et al.*, Civil Action No. 21-1429, D.I. 14 (D. Del. Mar. 1, 2022); *Zogenix, Inc. et al. v. Apotex Inc. et al.*, Civil Action No. 21-1533, D.I. 13 (D. Del. Jan. 3, 2022); *Bial-Portela & CA S.A. et al. v. Apotex Inc. et al.*, Civil Action No. 21-187, D.I. 6 (D. Del. Mar. 3, 2021); *Intercept Pharma., Inc. et al. v. Apotex Inc. et al.*, Civil Action No. 20-1105, D.I. 10 (D. Del. Oct. 23, 2020); *UCB, Inc. et al. v. Annora Pharma Pvt. Ltd. et al.*, Civil Action No. 20-987, D.I. 33 (D. Del. Oct. 6, 2020); *Sanofi-Aventis U.S., LLC et al. v. Actavis LLC et al.*, Civil Action No. 20-804, D.I. 46 (D. Del. July 20, 2020); *Merck Sharp & Dohme Corp. v. Apotex Inc. et al.*, Civil Action No. 20-749, D.I. 7 (D. Del. June 26, 2020).

29.    Alternatively, this Court may exercise personal jurisdiction over Apotex Inc. pursuant to Federal Rule of Civil Procedure 4(k)(2) because: (a) Gilead's claims arise under federal law; (b) Apotex Inc. is a foreign company not subject to personal jurisdiction in the courts of any state; and (c) Apotex Inc. has sufficient contacts with the United States as a whole, including but not limited to marketing and/or selling generic pharmaceutical products that are distributed and sold throughout the United States, such that this Court's exercise of jurisdiction over Apotex Inc. satisfies due process.

30.    Venue is proper in this Court for Apotex Inc. under 28 U.S.C. § 1391(c)(3) because Apotex Inc. is a foreign corporation and may be sued in any judicial district in the United States in which it is subject to the court's personal jurisdiction, including in this District.

## *Apotex Corp.*

31.     On information and belief, this Court has personal jurisdiction over Apotex Corp. because, *inter alia*, it is incorporated in Delaware.

32.     On information and belief, Apotex Corp. has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being subject to the jurisdiction of the court in the District of Delaware.

33.     On information and belief, Apotex Corp., directly and/or through its parent company Apotex Inc., markets, distributes, and sells generic pharmaceutical products throughout the United States, including in this District.

34.     On information and belief, Apotex Corp. derives substantial revenue from selling generic pharmaceutical products throughout the United States, including in this District, directly and/or through its parent company Apotex Inc.

35.     On information and belief, this Court also has personal jurisdiction because Apotex Corp., together with Apotex Inc. and MSN, has filed an ANDA for a generic copy of Gilead's GENVOYA® product, seeking approval from the FDA to market and sell the GENVOYA ANDA Product, throughout the United States, including in Delaware.  On information and belief, Apotex Corp. intends to commercially manufacture, use, and sell the GENVOYA ANDA Product upon receiving FDA approval.  On information and belief, if and when the FDA approves the GENVOYA ANDA, the GENVOYA ANDA Product would, among other things, be marketed, distributed and sold in Delaware, and/or prescribed by physicians practicing and dispensed by pharmacies located within Delaware, all of which would have a substantial effect on Delaware. By filing the GENVOYA ANDA, Apotex Corp. has made clear that it intends to use its distribution channels to direct sales of the GENVOYA ANDA Product into Delaware.

36.    Further, this Court has personal jurisdiction over Apotex Corp. because it has previously been sued in this District and has not challenged personal jurisdiction, and Apotex Corp. has affirmatively availed itself of this Court's jurisdiction by filing counterclaims in this District.  *See, e.g.*, *Gilead Sciences, Inc. et al. v. Apotex Inc. et al.*, Civil Action No. 22-1399, D.I. 25 (D. Del. Mar. 1, 2023); *Horizon Medicines LLC et al. v. Apotex Inc. et al.*, Civil Action No. 22-640, D.I. 35 (D. Del. June 28, 2022); *Galderma Laby's L.P. et al. v. Apotex Inc. et al.*, Civil Action No. 22-724, D.I. 13 (D. Del. June 23, 2022); *Bayer Healthcare LLC et al. v. Apotex Inc. et al.*, Civil Action No. 21-1429, D.I. 14 (D. Del. Mar. 1, 2022); *Zogenix, Inc. et al. v. Apotex Inc. et al.*, Civil Action No. 21-1533, D.I. 13 (D. Del. Jan. 3, 2022); *Bial-Portela & CA S.A. et al. v. Apotex Inc. et al.*, Civil Action No. 21-187, D.I. 6 (D. Del. Mar. 3, 2021); *Intercept Pharma., Inc. et al. v. Apotex Inc. et al.*, Civil Action No. 20-1105, D.I. 10 (D. Del. Oct. 23, 2020); *UCB, Inc. et al. v. Annora Pharma Pvt. Ltd. et al.*, Civil Action No. 20-987, D.I. 33 (D. Del. Oct. 6, 2020); *Sanofi-Aventis U.S., LLC et al. v. Actavis LLC et al.*, Civil Action No. 20-804, D.I. 46 (D. Del. July 20, 2020); *Merck Sharp & Dohme Corp. v. Apotex Inc. et al.*, Civil Action No. 20-749, D.I. 7 (D. Del. June 26, 2020).

37.    Venue is proper in this Court for Apotex Corp. under 28 U.S.C. § 1400(b) because, *inter alia*, Apotex Corp. is incorporated in Delaware.

### *MSN Pharma*

38.    On information and belief, this Court has personal jurisdiction over MSN Pharma, *inter alia*, because MSN Pharma is incorporated in Delaware.

39.    On information and belief, MSN Pharma, has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being subject to the jurisdiction of the court in the District of Delaware.

40.     On information and belief, MSN Pharma, directly and/or through its parent company MSN Labs, markets, distributes, and sells generic pharmaceutical products throughout the U.S., including in this District.

41.     On information and belief, MSN Pharma derives substantial revenue from selling generic pharmaceutical products throughout the U.S., including in this District, directly and/or through its parent company MSN Labs.

42.     On information and belief, MSN Pharma has been and is engaging in activities directed toward infringement of the Patent-In-Suit by, among other things, acting in concert with Apotex, MSN Labs and MSN Life in the preparation and submission of the GENVOYA ANDA seeking FDA approval to market the GENVOYA ANDA Product throughout the U.S., including in Delaware, before expiration of the Patent-In-Suit.

43.     Further, this Court has personal jurisdiction over MSN Pharma because it has previously been sued in this District and has not challenged personal jurisdiction, and has affirmatively availed itself of this Court's jurisdiction by filing counterclaims in this District. *See, e.g., Otsuka Pharmaceutical Co., Ltd. et al. v. MSN Laboratories Private Ltd. et al.*, Civil Action No. 20-1428, D.I. 13 (D. Del. Mar. 10, 2021); *Intercept Pharmaceuticals, Inc. v. MSN Laboratories Private Ltd.*, Civil Action No. 20-1214, D.I. 31 (D. Del. Jan. 27, 2021); *Amgen Inc. v. MSN Laboratories Private Ltd.*, Civil Action No. 21-712, D.I. 17 (D. Del. Jul. 12, 2021); *Gilead Sciences, Inc. et al. v. Lupin Limited et al.*, Civil Action No. 21-1621, D.I. 15 (D. Del. Jan. 17, 2022).

44.     Venue is proper in this Court for MSN Pharma under 28 U.S.C. § 1400(b) because, inter alia, MSN Pharma is incorporated in this District.

11

*MSN Labs. and MSN Life*

45.     On information and belief, this Court has personal jurisdiction over MSN Labs and MSN Life by virtue of, *inter alia*, their systematic and continuous contacts with this jurisdiction.

46.     On information and belief, either directly or through their subsidiaries, agents, and/or affiliates, MSN Labs and MSN Life regularly and continuously transact business within Delaware, including by manufacturing, selling, offering for sale, marketing, distributing, and/or importing generic versions of pharmaceutical products in the U.S., including Delaware. Specifically, on information and belief, this Court has personal jurisdiction over MSN Labs and MSN Life because, *inter alia*, they: (1) intend to manufacture and supply COBI on $SiO_2$ to market, sell, or distribute the GENVOYA ANDA Product to residents of Delaware; (2) have continuous and systemic contacts with the State of Delaware and regularly conduct business in the State of Delaware, either directly or through one or more of their affiliates, agents, and/or alter egos; (3) make their generic pharmaceutical products available in Delaware; (4) maintain a broad distributorship network within Delaware; and/or (5) enjoy substantial income from sales of their generic pharmaceutical products in Delaware. Furthermore, MSN Labs exercises control over Defendant MSN Pharma and operates through its wholly-owned subsidiary MSN Pharma, which is incorporated in Delaware.

47.     On information and belief, MSN Labs and MSN Life have been and is engaging in activities directed toward infringement of the Patent-In-Suit by, among other things, acting in concert with Apotex and MSN Pharma in the preparation and submission of the GENVOYA ANDA seeking FDA approval to market the GENVOYA ANDA Product throughout the U.S., including in Delaware, before expiration of the Patent-In-Suit.

48.     On information and belief, either directly or through their subsidiaries, agents, and/or affiliates, MSN Labs and MSN Life have submitted 100 ANDAs to FDA for pharmaceutical products and offer over 300 APIs for pharmaceutical products to sell throughout the U.S., including in Delaware. On information and belief, MSN Labs and MSN Life derive substantial revenue from the sale of those products in Delaware and have availed themselves of the privilege of conducting business within Delaware.

49.     On information and belief, MSN Labs and MSN Life market and distribute their pharmaceutical products through subsidiaries, agents, and/or affiliates including MSN Pharma, a Delaware corporation that is registered to do business and has appointed an agent to accept service in Delaware.

50.     On information and belief, MSN Labs, MSN Pharma, and MSN Life operate and act in concert as an integrated, unitary business. On information and belief, MSN Labs, MSN Pharma, and MSN Life work in concert with respect to the manufacturing, marketing, sale, and distribution of generic pharmaceutical products throughout the U.S., including in Delaware.

51.     Further, this Court has personal jurisdiction over MSN Labs and MSN Life because they have previously been sued in this District and have not challenged personal jurisdiction, and MSN Labs has affirmatively availed itself of this Court's jurisdiction by filing counterclaims in this District. *See, e.g., Otsuka Pharmaceutical Co., Ltd. et al. v. MSN Laboratories Private Ltd. et al.*, Civil Action No. 20-1428, D.I. 13 (D. Del. Mar. 10, 2021); *Intercept Pharmaceuticals, Inc. v. MSN Laboratories Private Ltd.*, Civil Action No. 20-1214, D.I. 31 (D. Del. Jan. 27, 2021); *Amgen Inc. v. MSN Laboratories Private Ltd.*, Civil Action No. 21-712, D.I. 17 (D. Del. Jul. 12, 2021); *Gilead Sciences, Inc. et al. v. Lupin Limited et al.*, Civil Action No. 21-1621, D.I. 15 (D. Del. Jan. 17, 2022).

52.     Alternatively, this Court may exercise personal jurisdiction over MSN Labs and MSN Life pursuant to Federal Rule of Civil Procedure 4(k)(2) because: (a) Plaintiff's claims arise under federal law; (b) MSN Labs and MSN Life are foreign companies not subject to personal jurisdiction in the courts of any state; and (c) MSN Labs and MSN Life have sufficient contacts with the U.S. as a whole, including but not limited to marketing and/or selling generic pharmaceutical products that are distributed and sold throughout the U.S., such that this Court's exercise of jurisdiction over MSN Labs and MSN Life satisfies due process.

53.     Venue is proper in this Court for MSN Labs and MSN Life under 28 U.S.C. § 1391(c)(3) because MSN Labs and MSN Life are foreign corporations and may be sued in any judicial district in the U.S. in which they are subject to the court's personal jurisdiction, including in this District.

## PATENT-IN-SUIT

54.     On August 7, 2018, the U.S. Patent and Trademark Office duly and legally issued the '718 patent, titled, "Use of Solid Carrier Particles to Improve the Processability of A Pharmaceutical Agent."  A true and correct copy of the '718 patent is attached hereto as Exhibit A.  The claims of the '718 patent are valid, enforceable, and not expired.  Gilead is the assignee of the '718 patent.

## ACTS GIVING RISE TO THIS ACTION

### *GENVOYA*®

55.     Gilead holds approved NDA No. 207561 for tablets containing a four-drug combination of elvitegravir (EVG), a human immunodeficiency virus (HIV-1) integrase strand transfer inhibitor, cobicistat (COBI), a CYP3A inhibitor, and emtricitabine (FTC) and tenofovir

alafenamide (TAF), both HIV-1 nucleoside analog reverse transcriptase inhibitors. The tablets are indicated as a complete regimen for the treatment of HIV-1 infection.

56.    Gilead markets the tablets approved under NDA No. 207561 in the United States under the registered trademark GENVOYA®. FDA's publication *Approved Drug Products with Therapeutic Equivalence Evaluations* (commonly known as the "Orange Book") identifies the Patent-In-Suit, among other patents, for GENVOYA®.

57.    At least one claim of the Patent-In-Suit covers GENVOYA®.

58.    Defendants submitted to FDA an ANDA listing GENVOYA® as the reference listed drug ("RLD").

### Defendants' Acts Regarding GENVOYA®

59.    On information and belief, Defendants submitted to FDA the GENVOYA ANDA under Section 505(j) of the FDCA, seeking FDA's approval to engage in the commercial manufacture, use, importation, offer for sale, and/or sale of the GENVOYA ANDA Product before the expiration of the Patent-In-Suit. On information and belief, FDA assigned the ANDA number 218575.

60.    On information and belief, Defendants sent a letter dated June 1, 2023 to Gilead ("Defendants' GENVOYA Notice Letter"), purporting to be a notice pursuant to 21 U.S.C. § 355(j)(2)(B). Defendants' GENVOYA Notice Letter states that the GENVOYA ANDA includes a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) with respect to the Patent-In-Suit.

61.    Gilead received Defendants' GENVOYA Notice Letter on or about June 2, 2023.

62.    Defendants' GENVOYA Notice Letter does not contest infringement of the claims of the '718 patent.

15

63.     This action is being commenced before the expiration of 45 days from the date Gilead received Defendants' GENVOYA Notice Letter, which triggers a stay of FDA approval of the GENVOYA ANDA pursuant to 21 U.S.C. § 355(j)(5)(B)(iii).

64.     By submitting the GENVOYA ANDA, Defendants have represented to FDA that the GENVOYA ANDA Product has the same active ingredients as GENVOYA®; has the same dosage forms and strengths as GENVOYA®; and is bioequivalent to GENVOYA®.

65.     Defendants also have stipulated that their submission of another ANDA that referenced the MSN DMF infringed certain claims of the '718 patent, and that their making, using, selling, offering for sale, and/or importing in or into the United States of that ANDA Product prior to the expiration of the '718 patent (including any extensions and/or additional periods of exclusivity to which Gilead is or will be entitled) would infringe certain claims of the '718 patent. *Gilead Sciences, Inc. et al. v. Lupin Ltd., et al.*, Civil Action No. 21-1621, D.I. 61 (D. Del. Nov. 7, 2022); *id.* at D.I. 128 (D. Del. Jun. 26, 2023); *Gilead Sciences, Inc. et al. v. Apotex Inc. et al.*, Civil Action No. 22-1399, D.I. 20 (D. Del. Feb. 28, 2023).

## COUNTS I-II FOR PATENT INFRINGEMENT

### Count I:  Infringement of the '718 Patent under 35 U.S.C. § 271(e)(2) by the GENVOYA ANDA Product

66.     Gilead realleges the foregoing paragraphs as if fully set forth herein.

67.     Pursuant to 35 U.S.C. § 271(e)(2)(A), Defendants have committed an act of infringement of the '718 patent by submitting to FDA the GENVOYA ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the GENVOYA ANDA Product in or into the United States prior to the expiration of the '718 patent.

68.     Defendants' commercial manufacture, use, offer for sale, sale, and/or importation of the GENVOYA ANDA Product and/or components of the GENVOYA ANDA Product prior to

16

the expiration of the '718 patent, and their inducement of and/or contribution to such conduct, would constitute infringement of at least one of the claims of the '718 patent either literally or under the doctrine of equivalents, including but not limited to claim 1.

69.     The GENVOYA Notice Letter does not dispute that Defendants infringe the claims of the '718 patent.

70.     Defendants have stipulated that their submission of another ANDA that referenced the MSN DMF infringed certain claims of the '718 patent, and that their making, using, selling, offering for sale, and/or importing in or into the United States of that ANDA product prior to the expiration of the '718 patent (including any extensions and/or additional periods of exclusivity to which Gilead is or will be entitled) would infringe certain claims of the '718 patent. *Gilead Sciences, Inc. et al. v. Lupin Ltd., et al.*, Civil Action No. 21-1621, D.I. 61 (D. Del. Nov. 7, 2022); *id.* at D.I. 128 (D. Del. Jun. 26, 2023); *Gilead Sciences, Inc. et al. v. Apotex Inc. et al.*, Civil Action No. 22-1399, D.I. 20 (D. Del. Feb. 28, 2023).

71.     The commercial manufacture, importation, use, sale, or offer for sale of the GENVOYA ANDA Product in violation of Gilead's patent rights will cause harm to Gilead for which damages are inadequate.

72.     Unless and until Defendants are enjoined from infringing the '718 patent, Gilead will suffer substantial and irreparable harm for which there is no remedy at law.

### Count II: Declaratory Judgment of Infringement of the '718 Patent under 35 U.S.C. §§ 271(a)-(c) and/or (g) by the GENVOYA ANDA Product

73.     Gilead realleges the foregoing paragraphs as if fully set forth herein.

74.     This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

17

75.    There is an actual case or controversy such that the Court may entertain Gilead's request for declaratory relief consistent with Article III of the U.S. Constitution, and that actual case or controversy requires a declaration of rights by this Court.

76.    Defendants have submitted to FDA an ANDA for a generic version of Gilead's GENVOYA® product.  According to the GENVOYA Notice Letter, Defendants intend to commercially manufacture, use, offer for sale, sell, and/or import the GENVOYA ANDA Product in or into the United States.  On information and belief, MSN manufactures and supplies Apotex with COBI on $SiO_2$ for the GENVOYA ANDA Product.

77.    Although FDA has not approved the GENVOYA ANDA, Defendants have made, and will continue to make, substantial preparation in the United States to commercially manufacture, use, sell, offer to sell, and/or import the GENVOYA ANDA Product and/or the COBI on $SiO_2$ component of the GENVOYA ANDA Product.

78.    Defendants' actions indicate that they do not intend to change their course of conduct.

79.    On information and belief, upon FDA approval of the GENVOYA ANDA, Defendants will infringe one or more claims of the '718 patent, either literally or under the doctrine of equivalents, including but not limited to claims 1, 5, and/or 14, by making, using, offering to sell, and/or selling the GENVOYA ANDA Product and/or the COBI on $SiO_2$ component of the GENVOYA ANDA Product in the United States, and/or importing said product and/or component into the United States, and/or by actively inducing and contributing to infringement, under 35 U.S.C. §§ 271(a), (b), (c) and/or (g), unless enjoined by the Court.

80.    The GENVOYA Notice Letter does not dispute that Defendants infringe the claims of the '718 patent.

81.     Defendants have stipulated that their submission of another ANDA that referenced the MSN DMF infringed certain claims of the '718 patent, and that their making, using, selling, offering for sale, and/or importing in or into the United States of that ANDA product prior to the expiration of the '718 patent (including any extensions and/or additional periods of exclusivity to which Gilead is or will be entitled) would infringe certain claims of the '718 patent. *Gilead Sciences, Inc. et al. v. Lupin Ltd., et al.*, Civil Action No. 21-1621, D.I. 61 (D. Del. Nov. 7, 2022); *id.* at D.I. 128 (D. Del. Jun. 26, 2023); *Gilead Sciences, Inc. et al. v. Apotex Inc. et al.*, Civil Action No. 22-1399, D.I. 20 (D. Del. Feb. 28, 2023).

82.     On information and belief, the GENVOYA ANDA Product will include COBI on $SiO_2$ as a component.

83.     On information and belief, if the GENVOYA ANDA is approved by FDA, Defendants will commercially manufacture, use, offer to sell, and/or sell the GENVOYA ANDA Product and/or the COBI on $SiO_2$ component of the GENVOYA ANDA Product in the United States, and/or import said product and/or component into the United States.

84.     Through at least the foregoing actions, Defendants will directly infringe one or more claims of the '718 patent under 35 U.S.C. § 271(a).

85.     On information and belief, Defendants have actual knowledge of the '718 patent.

86.     On information and belief, Defendants became aware of the '718 patent no later than the filing of the GENVOYA ANDA.

87.     On information and belief, if the GENVOYA ANDA is approved by FDA, the commercial manufacture, use, offer to sell, and/or sale of the GENVOYA ANDA Product and/or the COBI on $SiO_2$ component of the GENVOYA ANDA Product in the United States, and/or

importation of said product and/or component into the United States will directly infringe one or more claims of the '718 patent.

88.     On information and belief, if the GENVOYA ANDA is approved by the FDA, Defendants will actively induce, encourage, aid and abet the commercial manufacture, use, offer for sale, and/or sale of the GENVOYA ANDA Product and/or the COBI on $SiO_2$ component of said product in the United States, and/or importation of said product and/or component into the United States, with knowledge and specific intent that the conduct infringes the '718 patent.  On information and belief, this knowledge is reflected through, among other things, the GENVOYA Notice Letter, which does not contest infringement of the claims of the '718 patent, and Defendants' prior stipulations to infringement of the '718 patent.

89.     On information and belief, at least through Defendants' agreement to manufacture and supply COBI on $SiO_2$ for the GENVOYA ANDA Product, Defendants will encourage the importation, offer for sale, sale, or use the COBI on $SiO_2$ composition claimed in the '718 patent within the U.S., and Defendants will know or should know that such conduct will occur.

90.     Through at least the foregoing actions, Defendants will actively induce the infringement of at least one claim of the '718 patent under 35 U.S.C. § 271(b).

91.     On information and belief, Defendants know that COBI on $SiO_2$ is especially made or adapted for use in infringing the '718 patent, *e.g.*, by incorporating COBI on $SiO_2$ as a component of a composition claimed in the '718 patent, and that COBI on $SiO_2$ is not suitable for substantial non-infringing use.

92.     On information and belief, if the GENVOYA ANDA is approved by the FDA, the commercial manufacture, use, offer to sell, and/or sale of the GENVOYA ANDA Product, and/or

20

the COBI on $SiO_2$ component of the GENVOYA ANDA Product, in the United States, and/or the importation of said product and/or component into the United States will infringe the '718 patent.

93.     On information and belief, if the GENVOYA ANDA is approved by the FDA, Defendants' offer to sell and/or sale of the GENVOYA ANDA Product, and/or the COBI on $SiO_2$ component of the GENVOYA ANDA Product, in the United States, and/or the importation of said product and/or component into the United States will contribute to the actual infringement of the '718 patent.

94.     On information and belief, Defendants know that their offer to sell and/or sale of the GENVOYA ANDA Product, and/or the COBI on $SiO_2$ component of the GENVOYA ANDA Product, in the United States, and/or the importation of said product and/or component into the United States will contribute to the actual infringement of the '718 patent.

95.     Through at least the foregoing actions, Defendants will contribute to the infringement of at least one claim of the '718 patent under 35 U.S.C. § 271(c).

96.     On information and belief, if the GENVOYA ANDA is approved by FDA, Defendants will import a product made by a process claimed in the '718 patent into the United States and/or offer to sell, sell, or use that product in the United States.

97.     On information and belief, the product made by a process claimed in the '718 patent will not be materially changed by a subsequent process nor will it become a trivial and nonessential component of another product.

98.     Through at least the foregoing actions, Defendants will infringe at least one claim of the '718 patent under 35 U.S.C. § 271(g).

99.     Gilead is entitled to a declaratory judgment that Defendants' commercial manufacture, use, offer for sale, sale, and/or importation of the GENVOYA ANDA Product and/or

21

the COBI on $SiO_2$ component of said product in or into the United States, and/or Defendants' inducement and contribution to the same, prior to the expiration of the '718 patent will constitute infringement of the '718 patent.

100.   The commercial manufacture, importation, use, sale, or offer for sale of the GENVOYA ANDA Product and/or the COBI on $SiO_2$ component of said product in or into the United States in violation of Gilead's patent rights will cause harm to Gilead for which damages are inadequate.

101.   Unless and until Defendants are enjoined from infringing the '718 patent, Gilead will suffer substantial and irreparable harm for which there is no remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Gilead prays that this Court grant the following relief:

A)   A judgment that Defendants have infringed the '718 patent under 35 U.S.C. § 271(e)(2)(A);

B)   A judgment and order pursuant to 35 U.S.C. § 271(e)(4)(A) providing that the effective date of any FDA approval of the GENVOYA ANDA shall be a date which is not earlier than the day after the expiration date of the '718 patent, as extended by any applicable periods of exclusivity to which Gilead is or will be entitled;

C)   A judgment declaring that Defendants' commercial manufacture, use, offer for sale, sale, and/or importation of the GENVOYA ANDA Product and/or component of the GENVOYA ANDA Product in or into the United States prior to the expiration of the '718 patent (including such actions by their officers, agents, servants, employees, licensees, representatives, and attorneys, and all other persons acting or attempting to act in active concert or participation with Defendants or acting on Defendants' behalf) will constitute infringement of the '718 patent under

22

35 U.S.C. §§ 271(a), (b), (c), and/or (g) and providing any further necessary or proper relief based on the Court's declaratory judgment or decree;

D)      An order under 35 U.S.C. § 271(e)(4)(B) and/or 35 U.S.C. § 283 permanently enjoining Defendants, their affiliates, subsidiaries, and each of their officers, agents, servants and employees and those acting in privity or concert with them, from making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, the GENVOYA ANDA Product until the day after the expiration date of the '718 patent, including any extensions and/or additional periods of exclusivity to which Gilead are or will be entitled, and from otherwise infringing one or more claims of the '718 patent;

E)      A declaration that this case is exceptional;

F)      An award of Gilead's costs, expenses, reasonable attorneys' fees and such other relief as the Court deems proper and just pursuant to 35 U.S.C. § 271(e)(4) and 35 U.S.C. § 285; and

G)      Such other and further relief as this Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

OF COUNSEL:

Charlotte Jacobsen
Allyson E. Parks
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

*Attorneys for Plaintiff Gilead Sciences, Inc.*

23

David Glandorf
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO  80202-2642
(303) 298-5700

Darish Huynh
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA  92612-4412
(949) 451-3800

July 14, 2023